1

2

3                    IN THE UNITED STATES DISTRICT COURT

4               FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6   JOSEPH A. GEORGE,              )   No. C 06-2800 CW (PR)
                                   )
7            Plaintiff,            )   ORDER GRANTING DEFENDANTS'
                                   )   MOTION FOR SUMMARY
8       v.                         )   JUDGMENT, DENYING
                                   )   PLAINTIFF'S MOTION FOR
9   A. JONES, ET AL.,              )   SUMMARY JUDGMENT AND
                                   )   DENYING PENDING MOTIONS
10           Defendants.           )
                                   )   (Docket nos. 18, 29, 33,
11  _____ )   35, 46)

12       Plaintiff Joseph A. George, a state prisoner who was

13  incarcerated at Pelican Bay State Prison (PBSP) until at least

14  October 25, 2007, filed this pro se civil rights action under 42

15  U.S.C. § 1983.  He alleges that several defendants, including

16  Defendants A. Jones, Chalene David, Maureen McLean and Linda Rowe,

17  were deliberately indifferent to his serious medical needs,

18  including his stomach and vision problems.  Plaintiff also alleges

19  state law negligence claims against Defendants.

20       In an Order dated February 1, 2007, the Court found that

21  Plaintiff's allegations stated cognizable claims against Defendants

22  David, Rowe, Jones and McLean.  The Court dismissed Plaintiff's

23  claims against the other Defendants.

24       Defendants Jones, McLean, David and Rowe filed a motion for

25  summary judgment.  Plaintiff filed a cross-motion for summary

26  judgment.  Defendants oppose Plaintiff's motion.  For the reasons

27  discussed below, the Court GRANTS Defendants' motion for summary

28  judgment and DENIES all other pending motions.

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

PROCEDURAL BACKGROUND

On April 25, 2006, Plaintiff filed a complaint naming the following Defendants:  PBSP Medical Technical Assistants (MTAs) A. Jones and Gus Reallon; PBSP nurse practitioner Maureen McLean; PBSP physicians Chalene David, Joan Lazore, Rick Marino and Linda Rowe; PBSP Medical Appeal Analyst Candice Worch; PBSP Correctional Health Service Administrator Acel Thacker; PBSP Health Care Manager Dwight Winslow; and PBSP Chief Medical Officer Michael Sayre, M.D.

On February 1, 2007, the Court dismissed Plaintiff's deliberate indifference claims against Defendant Marino for failure to disclose x-ray results, and those against Defendants Worch and Thacker concerning the handling of his appeals.  The Court also dismissed all state law claims against Defendants Reallon, Lazore and Marino.  The Court dismissed with leave to amend Plaintiff's deliberate indifference claims against Defendants Reallon, Lazore, Winslow and Sayre, related to treatment of his fractured thumb and exposure to a cell used to quarantine inmates with staph infections, specifying, the failure to do so would result in dismissal of the claim without prejudice.

The Court found that Plaintiff's allegations stated cognizable Eighth Amendment claims for deliberate indifference to his serious medical needs against Defendants David and Rowe for failing to provide treatment for his stomach ulcers, and against Defendants Jones, McLean and David, for failing to contact PBSP's optical department to provide him with a replacement pair of eyeglasses and to treat him for his vision headaches.  Pursuant to 28 U.S.C. § 1367, the Court retained supplemental jurisdiction over Plaintiff's state law negligence claims against Defendants Jones,

2

McLean, David and Rowe.  The Court served Defendants with a copy of the original complaint.

On March 9, 2007, Plaintiff filed a First Amended Complaint (FAC) (docket no. 17), which he did not serve on Defendants.  In his FAC, Plaintiff added the following Defendants: PBSP Correctional Officer E. Rios; PBSP MTA Victor Girospis; PBSP physicians Wahidullah and Bhawna Jain; Secretary of California Department of Corrections and Rehabilitation James E. Tilton; Sutter Coast Hospital (SCH); SCH Hospital Director John Doe; SCH physician James Holmes; and SCH nurse practitioner Joan Butler.

On March 9, 2007, Plaintiff also filed a motion for a preliminary injunction to "order Defendants to provide Plaintiff a special diet and to be examined by a qualified gastroenterologist specialist for an endoscopy and biopsy test, provide Plaintiff a copy of the results and to carry out a planned course of treatment recommended by the specialist" (docket no. 18).

On April 23, 2007,  Defendants Jones, McLean, David and Rowe filed an answer to Plaintiff's original complaint (docket no. 28).

On May 10, 2007, Plaintiff filed a motion for leave to file a supplemental complaint (docket no. 29).[1]

On June 4, 2007, Plaintiff filed a document entitled "notice of lawsuit" against SCH (docket no. 32).

On July 9, 2007, Plaintiff filed a request for subpoenas duces tecum (docket no. 33) to obtain appeal logs; a rules violation report; a lock up order; a log of outgoing legal mail; a copy of a

---

[1]Plaintiff entitled the motion, "leave to file a supplemental complaint and second amended complaint."  However, in the text, Plaintiff clarified that it was "for leave to file a supplemental complaint pursuant to [Federal Rule of Civil Procedure] 15(d)."

United States District Court
For the Northern District of California

questionnaire; all medical records from February 2, 2003, onward;
and all "policies, directives, and memoranda" on how to diagnose
and treat stomach ulcers, acid reflux, hand fractures and vision
ailments, and how to provide chronic care.

On July 23, 2007, Defendants Jones, McLean, David and Rowe
filed a motion for summary judgment[2] (docket no. 35).  Defendants'
motion was accompanied by Plaintiff's complete medical record (MR)
and Declarations from Dr. Sayre, PBSP optometrist Steve Inouye,
O.D., and Deputy Attorney General Neah Huynh.

On October 15, 2007, Plaintiff also filed a motion for summary
judgment (docket no. 46).  In a notice, filed the same day,
Plaintiff indicated that he was to be released from PBSP, on
parole, on October 25, 2007 (docket no. 45).

On November 14, 2007, Defendants filed an opposition to
Plaintiff's motion for summary judgment (docket no. 48).

FACTUAL BACKGROUND

While incarcerated at PBSP, Plaintiff received medical
treatment for, among other things, stomach pain and vision
problems.  He received treatment from several PBSP medical staff
members, including Defendants David and Rowe for stomach pains, and
Defendants Jones, McLean and David, for vision problems.

---

[2]Defendants took note of the docket reference to Plaintiff's FAC,
filed in March, 2007, but stated that they had not been served with
the FAC, nor had they been able to download it from Pacer.  Further,
because the Court had only screened the original complaint, pursuant
to 28 U.S.C. § 1915A(a), Defendants explained that they would refer
to the original complaint in their motion.

Because the allegations related to Plaintiff's claims against
Defendants Jones, McLean, David and Rowe are not materially different
from the allegations in his original complaint, and because Defendants
based their motion on the original complaint, the Court will refer to
Plaintiff's original complaint in the discussion of facts.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

I.    Treatment for Stomach Pain

On February 18, 2004, upon arriving at PBSP, Plaintiff was screened by medical staff; he reported that he had a stomach ulcer,[3] high blood pressure and an enlarged heart, and he listed a variety of prescription medications that he was currently taking. (MR 003.)  Medical staff referred Plaintiff to a chronic care program, through which he would receive regular care for his chronic health problems, including his mental health issues and heart problems.  (Id.)  On February 19, 2004, Plaintiff complained of stomach ache and indigestion, reported being depressed and hearing voices, and requested appointments with medical and psychiatric doctors; he was examined by a PBSP nurse, who referred Plaintiff to the next available medical and psychiatric doctors. (MR 005.)  On February 23, 2004, Plaintiff informed a nurse of chest and stomach pains; on February 24, 2004, he continued to complain of pain and was escorted to the medical clinic where he requested Maalox from Defendant David.  (Compl. ¶¶ 18-20.) Defendant David told Plaintiff that there was no Maalox available. (Id. ¶ 20.)  Defendant David then ordered eight medications for Plaintiff, including chewable Mylanta,[4] Prilosec,[5] and prescription high blood pressure medicine.  (MR 010.)  On February 25, 2004,

---

[3]A peptic ulcer is an erosion or sore in the wall of the stomach or duodenum, the area of the small intestine connected to the stomach. Stedman's Medical Dictionary, 2061-62 (28th ed. 2006) (Stedman's).

[4]Although Maalox and Mylanta are both non-prescription antacids, it appears from the record that PBSP does not make Maalox available and medical staff must special order, or "prescribe," Mylanta.

[5]Prilosec OTC® Tablets, generic name omeprazole, are prescription drugs, used for the long-term treatment of heartburn. Physician's Desk Reference 2652 (62nd ed. 2008).

Plaintiff received these medications.[6]  (Compl. ¶ 22.)

From 2004 to 2005, except for a period from June to July, 2005, Plaintiff received monthly prescriptions for Prilosec and chewable Mylanta.  (MR 010, 031-37, 049.)  On several occasions, when Plaintiff ran out of Prilosec or Mylanta prior to his next scheduled refill, PBSP medical staff placed pharmacy requests and Plaintiff received refills within one day.  (Id. at 022, 026, 038, 043-44, 383, 387.)  In addition to heartburn medications, while at PBSP, Plaintiff took high blood pressure medicine for his heart problems and a variety of antidepressant and antipsychotic drugs. (Id. at 073-77.)

On February 25, 2005, Plaintiff saw Defendant McLean to request a replacement of his heart medication and Defendant McLean ordered the medication, but noted that it was the second time that month that Plaintiff had requested a replacement prescription. (Compl. Ex. 42.)

On June 2, 2005, at Plaintiff's chronic care appointment, Defendant Rowe examined Plaintiff for hypertension, prescribed heart medication, and informed Plaintiff that she did not yet have the results of a recent echocardiogram test.  (MR 027.)  Plaintiff alleges that Defendant Rowe refused to prescribe Prilosec or Mylanta tablets during this appointment.  (Compl. ¶ 25.)

On June 12, July 11 and July 22, 2005, Plaintiff attempted to refill his Prilosec and Mylanta prescriptions, but the pharmacy had no records of those prescriptions.  (Id. ¶¶ 26-27, 31.)  For two

---

[6]Both Plaintiff's complaint and FAC erroneously report this date as April 25, 2004.  During his deposition, Plaintiff clarified that he meant February 25, 2004.  (Pl.'s Depo. 33-34.)

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

months, Plaintiff received Mylanta tablets from other inmates. (<u>Id.</u> ¶ 34.)  On August 1, 2005, Dr. Sayre ordered Prilosec for Plaintiff.  (<u>Id.</u>)

Plaintiff's medical records indicate that he does not have a stomach ulcer.  On March 10, 2004, Plaintiff tested negative for H. pylori, the type of bacteria responsible for most stomach ulcers. (MR 011, 419-20.)  On November 28, 2006, a radiological examination of Plaintiff's upper-gastrointestinal tract showed no evidence of an ulcer. (<u>Id.</u> at 438.)

In his Declaration, Dr. Sayre, who oversees all medical records and prisoner medical care at PBSP, reviewed Plaintiff's medical records to comment on his stomach problems.  (Sayre Decl. ¶ 8.)  Dr. Sayre noted that the November 28, 2006 test of Plaintiff's upper-gastrointestinal tract showed a minimal amount of acid indigestion and, along with Plaintiff's medical records as a whole, indicated that Plaintiff suffers from mild heartburn, a "digestive problem that occurs when stomach acid comes into contact with the lining of the esophagus, causing irritation." (<u>Id.</u> ¶ 9.) Dr. Sayre explained that heartburn, or acid indigestion, is common among Americans, usually occurs after eating a meal, and is typically treated over the long term with prescription Prilosec. (<u>Id.</u>)  Prilosec does not provide immediate relief, whereas non-prescription antacids, such as Mylanta, Maalox and Rolaids, provide short-term relief by neutralizing the stomach acids that cause heartburn.  (<u>Id.</u>)  Dr. Sayre noted that inmates at PBSP may purchase Rolaids, without a prescription, at the prison canteen. (<u>Id.</u>)  He also explained that heartburn symptoms can be prevented or curbed by maintaining a healthy weight, avoiding coffee and

greasy foods, exercising regularly and avoiding eating meals just prior to lying down. (Id.) Dr. Sayre listed the side effects, such as stomach and vision problems, produced by several of Plaintiff's prescription medications. (Id. ¶¶ 13d-13e, 131.)

## II. Treatment for Vision Problems

On March 10, 2004, Plaintiff was seen by Defendant McLean after complaining of several minor ailments, including vision related headaches, because he was "reading a lot." (MR 012-13.) Defendant McLean prescribed Tylenol for Plaintiff's vision headaches, scheduled an appointment for him to see an optometrist and advised him to cut down on reading to reduce headaches. (Id.) On May 11, 2004, Dr. Inouye, PBSP's optometrist, examined Plaintiff's eyes and determined that he was nearsighted with 20/80 vision in both eyes--meaning Plaintiff could see at twenty feet what a person with 20/20 vision could see at eighty feet. (Inouye Decl. ¶ 3; MR 051.) Dr. Inouye ordered prescription eyeglasses for Plaintiff. (MR 052.) More than three months later, on August 16, 2004, Plaintiff received his prescription eyeglasses. (Compl. Ex. 37.) Before he received this pair of eyeglasses at PBSP, Plaintiff had never worn prescription eyeglasses. (MR 012; Pl.'s Depo. 111.)

On October 15, 2004, Plaintiff gave Defendant Jones his eyeglasses, requesting that the hinges be repaired.[7] (Compl.

---

[7]In his original complaint, Plaintiff alleged that Defendant Jones "discarded the glasses" after receiving them. (Compl. ¶ 60.) In his FAC, Plaintiff only alleged that he handed Defendant Jones the eyeglasses with a request that they be repaired. (FAC ¶ 82.) In his deposition, Plaintiff retracted the statement that Defendant Jones discarded his eyeglasses, stated that he did not think that she intentionally withheld them from him, and explained that his only allegation against Defendant Jones was that she received his broken eyeglasses. (Pl.'s Depo. 69-72.)

United States District Court
For the Northern District of California

¶ 58.)  On November 4, 2004, Plaintiff asked Barbara Fellows, a PBSP nurse, to inquire about his broken eyeglasses; she called the MTA clinic, as well as two other PBSP medical staff members, all of whom reported that they were unable to find Plaintiff's eyeglasses. (Compl. Ex. 38.)

On November 9, 2004, Plaintiff saw Defendant McLean for weight management counseling and told her that he had broken his eyeglasses but that they were being repaired.  (MR 020.)  Plaintiff also complained of headaches and requested Tylenol, which Defendant McLean prescribed.  (Id.)  On January 5, 2005, Plaintiff saw Defendant McLean regarding his hypertension, and she again prescribed Tylenol.  (MR 108.)  Plaintiff also asked Defendant McLean to call the optical department about his eyeglasses, but she was taking notes and did not respond.  (Pl.'s Depo. 75.)  On February 8, 2005, Plaintiff saw Defendant McLean regarding his heartburn, and when he asked about his eyeglasses, Defendant McLean said that she would ask the MTA to call.  (Id. at 82.)  On February 25, 2005, Plaintiff alleges that he asked Defendant McLean to call the optical department about his eyeglasses, but she said it was not her job.  (Pl.'s Depo. 84-85.)

On March 17, 2005, Plaintiff submitted a request for an interview with the MTA regarding his broken eyeglasses.  (Compl. Ex. 43.)  On April 21, 2005, in response to Plaintiff's request, an MTA determined that Plaintiff's eyeglasses were lost and placed him on the list for an optical consultation for a new pair of eyeglasses.  (Id.)

In early April, 2005, Plaintiff alleges that he also asked Defendant David to contact the optical department about the missing

eyeglasses and she said it was not her job.  (Pl.'s Depo. 91-92.)
On April 26, 2005, Plaintiff saw Defendant David regarding the
results of his echocardiogram and, at Plaintiff's request, she
prescribed Tylenol for headaches caused by "reading or watching
television too long."  (MR 098; Compl. Ex. 50.)  Plaintiff asked
Defendant David to schedule another appointment with the
optometrist regarding his broken eyeglasses, and she informed
Plaintiff that if his eyeglasses were not returned by the time of
his next chronic care appointment, she would schedule the
appointment.  (Pl.'s Depo. 92.)  On June 2, 2005, Defendant Rowe
referred Plaintiff to the optometry department regarding his broken
eyeglasses.  (MR 027.)

On September 9, 2005, Dr. Inouye examined Plaintiff's eyes
again, and determined that Plaintiff's vision had improved to
20/60.  (Inouye Decl. ¶ 4; MR 054.)  Dr. Inouye ordered another
pair of prescription eyeglasses for Plaintiff.  (MR 055.)  Three
months later, on December 8, 2005, Plaintiff received the
eyeglasses.  (Compl. Ex. 47.)

Dr. Inouye's professional opinion of Plaintiff's vision
problems is that, without corrective eyeglasses, Plaintiff would
experience a decrease in long range visual sharpness, but this
would not be serious and would only cause minor discomfort.
(Inouye Decl. ¶ 5.)  Dr. Inouye found that Plaintiff's visual
sharpness at close range was "very good, even without eyeglasses."
(Id. ¶ 6.)  Dr. Inouye explained that only those with highly
sensitive vision needs would be likely to experience vision-related
headaches.  (Id. ¶ 5.)  Dr. Inouye determined that Plaintiff did
not have sensitive vision needs.  (Id.)

10

In his declaration, Dr. Sayre explained PBSP's policy regarding inmate vision problems and repair of prescription eyeglasses:

> If an inmate complains of vision problems, then a physician or nurse practitioner will refer him to the optometry department.  But if the inmate's glasses need repair (e.g. new frame or hinges) or if the prisoner inquires about the status of his glasses, then the attending physician or nurse practitioner would refer him to the MTA (medical technical assistant) clinic.  The designated MTA clinic coordinator has the responsibility of coordinating all medical appliances, which includes eyeglasses, and would follow up upon request. . . .  The inmate may also inquire about the status of his eyeglasses by submitting a request for an interview to the MTA clinic.

(Sayre Decl. ¶ 7.)

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence if it is supported by affidavits or other evidentiary material.  Id. at 324.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden by either of two methods.  Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).  The party may

produce evidence negating an essential element of the non-moving party's case, or, after suitable discovery, the party may show that the non-moving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.  Id.  If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues. Id.  After the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  The moving party may also discharge its burden by negating an essential element of the non-moving party's claim or defense by producing affirmative evidence of such negation.  Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue.  UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994).  That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue.  Id.  Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case.  Id.  The

non-moving party's "burden of contradicting [the moving party's]
evidence is not negligible" and does not change merely because
resolution of the issue is "highly fact specific."   Id.

DISCUSSION

I.   Defendants' Motion for Summary Judgment

On July 23, 2007, Defendants filed a motion for summary
judgment on all of Plaintiff's remaining claims; his deliberate
indifference claims and his supplemental state law claims related
to the treatment of his stomach and vision problems (docket no.
35).   Plaintiff responded by filing a cross-motion for summary
judgment, which the Court will also consider as his opposition to
Defendants' motion.

Deliberate indifference to serious medical needs violates the
Eighth Amendment's proscription against cruel and unusual
punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The
analysis of a claim of deliberate indifference to serious medical
needs involves an examination of two elements:  (1) a prisoner's
serious medical needs and (2) a deliberately indifferent response
by the defendants to those needs.  McGuckin v. Smith, 974 F.2d
1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX
Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)
(en banc).  A serious medical need exists if the failure to treat a
prisoner's condition could result in further significant injury or
the "unnecessary and wanton infliction of pain."  Id. (citing
Estelle, 429 U.S. at 104).  The existence of an injury that a
reasonable doctor or patient would find important and worthy of
comment or treatment; the presence of a medical condition that
significantly affects an individual's daily activities; or the

13

United States District Court
For the Northern District of California

existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison employee is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however. Neither a finding that a defendant's actions are egregious nor that they resulted in significant injury to a prisoner is required to establish a violation of the prisoner's federal constitutional rights, McGuckin, 974 F.2d at 1060-61, but the existence of serious harm tends to support an inmate's deliberate indifference claims, Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). On the other hand, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding

14

**United States District Court**
For the Northern District of California

treatment does not give rise to a § 1983 claim." <u>Franklin v.</u>
<u>Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).

    A.   Plaintiff's Stomach Ulcer

In his complaint, Plaintiff alleges that he has a stomach ulcer, which is a serious medical need, and that Defendants David and Rowe were deliberately indifferent to that need.

Plaintiff alleges that he suffers from a "peptic ulcer." Aside from his statement that his mother has stomach ulcers, Plaintiff produces no evidence that he suffers from ulcers. Plaintiff's conclusory statement, without more, is not sufficient to carry his burden of proof at the summary judgment stage. <u>See</u> <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case, conclusory statement not sufficient to carry non-moving party's burden in a motion for summary judgment). In contrast, Defendants provided Plaintiff's complete medical record for all of the treatment that Plaintiff received while incarcerated at PBSP, and this evidence shows that Plaintiff does not have an ulcer. On March 10, 2004, Plaintiff tested negative for the bacteria that commonly causes ulcers. On November 28, 2006, another test of Plaintiff's gastrointestinal system indicated that he suffered from mild acid reflux, but that he did not suffer from an ulcer.

The evidence indicates that Plaintiff suffers from heartburn, which is not a serious medical need within the meaning of the Eighth Amendment. <u>See</u> <u>O'Loughlin v. Doe</u>, 920 F.2d 614, 617 (9th Cir. 1990) (finding that failure to satisfy a plaintiff's repeated requests for aspirins and antacids does not amount to a constitutional violation). Heartburn is common among the American

population and can be managed through diet, exercise, and medication.  However, even if Plaintiff's stomach pain amounted to a serious medical need, Plaintiff must produce evidence that Defendants were deliberately indifferent to his need.

Plaintiff's claim against Defendant David rests solely on her inability to give him Maalox on February 24, 2004.  (Pl's Depo. at 28-29.)  Plaintiff does not dispute Defendants' evidence that Defendant David did not have Maalox available at Plaintiff's February 24, 2004 appointment, or that Defendant David ordered two heartburn medications for Plaintiff that he received the next day. Further, Plaintiff does not dispute the availability of an over-the-counter antacid, Rolaids, that treats the same symptoms as Maalox and Mylanta and that he could have purchased at the prison canteen.  Although Plaintiff waited one day to receive his medications, in the interim, he received Mylanta from other inmates.  Defendant David did not deny, delay, or intentionally interfere with Plaintiff's treatment, but rather, took reasonable steps to address Plaintiff's medical need by ordering both an antacid, for short-term relief of his symptoms, and a prescription medication for the long-term treatment of his heartburn.

Plaintiff also asserts that Defendant Rowe was deliberately indifferent for failing to order Prilosec or Mylanta on June 2, 2005.  Defendant Rowe moves for summary judgment on this claim.  In his cross-motion for summary judgment, Plaintiff does not make any specific argument pertaining to this claim.  Plaintiff's medical record indicates that he did not receive Mylanta or Prilosec from June through July, 2005.  However, the record contains no evidence that Defendant Rowe deliberately disregarded Plaintiff's medical

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

needs.  During a June, 2005 chronic care appointment, Defendant

Rowe addressed Plaintiff's chronic care issues of hypertension and

cardiac problems, by prescribing medications, ordering tests, and

offering medical advice regarding the management of Plaintiff's

symptoms.  In his deposition, Plaintiff clarifies that he and

Defendant Rowe had a disagreement about an unrelated matter, and

when she later said "no" to his request for prescription antacids,

he got up and walked out without saying another word.  (Pl.'s Depo.

at 36-41.)  Plaintiff provides no argument or evidence that

Defendant Rowe purposely denied or delayed Plaintiff's access to

treatment; that Plaintiff suffered from a serious unmet medical

need; or that he suffered any harm from not receiving a

prescription for antacids for two months.

For the duration of Plaintiff's confinement at PBSP,

Defendants David and Rowe, and other medical staff, provided timely

treatment, consistent medical care and prescription medications for

Plaintiff's heartburn, as well as for his more serious chronic

physical and mental health conditions.  The two specific incidents,

on February 4, 2004 and June 2, 2005, which give rise to

Plaintiff's claims, evince reasonable provision of medical care,

rather than purposeful attempts to deny or obstruct Plaintiff's

access to treatment.  See Toguchi v. Chung, 391 F.3d 1051, 1061

(9th Cir. 2004) (finding summary judgment appropriate where

physician provided consistent, responsive care to inmate and did

not deny, delay, or intentionally interfere with treatment).

In sum, Plaintiff has failed to satisfy an essential element

of his claim--that he suffers from ulcers; no reasonable jury could

find that Plaintiff's mild heartburn is a serious medical need

**United States District Court**
For the Northern District of California

within the meaning of the Eighth Amendment; and neither Defendant David nor Defendant Rowe was deliberately indifferent to Plaintiff's medical need.

B. Plaintiff's Vision Problems

Plaintiff alleges that Defendants Jones, McLean and David were deliberately indifferent to his serious medical needs by failing to contact PBSP's optical department to provide him with a replacement pair of eyeglasses and to treat him for his vision headaches.

On March 10, 2004, less than one month after Plaintiff arrived at PBSP, Defendant McLean assessed Plaintiff's complaint of vision-related problems, ordered Tylenol to relieve his headaches, advised him to cut down on his reading, and scheduled an appointment for him to see an optometrist. One month later, on May 11, 2004, Plaintiff's eyes were examined by the PBSP optometrist, who found that Plaintiff was nearsighted and, thus, ordered corrective lenses. More than three months later, on August 16, 2004, Plaintiff received his first pair of corrective eyeglasses.

Plaintiff's medical record and Dr. Inouye's declaration indicate that Plaintiff's specific vision problems are not a serious medical need within the meaning of the Eighth Amendment. Plaintiff's nearsightedness may cause some discomfort, because objects that are far away might appear blurry. However, Dr. Inouye noted that Plaintiff's close-range vision, without corrective lenses, is "very good" and that the types of activities he could potentially engage in as a prisoner at PBSP, including reading, drawing, watching television and conversing with other inmates, would not be visually or physically difficult for someone with Plaintiff's visual acuity and lack of special visual sensitivity.

18

United States District Court
For the Northern District of California

(Inouye Decl. ¶¶ 5-6.)  Further, in the time period that Plaintiff did not have eyeglasses, his vision actually improved.

Plaintiff also asserts that his headaches were "migraines." Plaintiff's conclusory statement, without more, is insufficient to withstand summary judgment.  Plaintiff's medical record makes reference to Tylenol prescriptions for tension headaches. Plaintiff provides no evidence that he was diagnosed with migraines or suffered from migraine symptoms while at PBSP.  Dr. Inouye commented that Plaintiff's headaches could have been caused by a myriad of things, such as medications, excessive reading, and poor lighting.  The evidence indicates that several of Plaintiff's prescription medications could have produced headaches as a side effect.  Plaintiff's medical record also shows that, on several occasions, Plaintiff stated that he developed headaches after spending too much time reading or watching television.

Neither Plaintiff's vision impairment nor his headaches constitute a serious medical need under the Eighth Amendment.  Even if they did, Plaintiff must establish that Defendants were deliberately indifferent in treating those needs.

Plaintiff's sole allegation against Defendant Jones is that she was the last person to see his eyeglasses.  On October 15, 2004, only two months after receiving his first pair of eyeglasses, the hinges became damaged and Plaintiff gave the glasses to Defendant Jones, requesting that they be repaired.  The evidence shows that, if Plaintiff's allegation is true, Defendant Jones did no more than receive Plaintiff's broken eyeglasses.  Plaintiff presents no evidence to suggest Defendant Jones intentionally or deliberately misplaced his eyeglasses.

**United States District Court**
For the Northern District of California

Plaintiff argues that PBSP staff, specifically Defendants McLean and David, must have purposefully delayed the process of finding his eyeglasses and, alternatively, referring him to the optometry department for a new pair. On November 4, 2004, a nurse contacted the optical department at Plaintiff's request, but no one she spoke to could locate Plaintiff's eyeglasses. On February 8, 2005, Defendant McLean told Plaintiff that she would ask an MTA to call the optical department regarding his broken eyeglasses. On April 21, 2005, after Plaintiff submitted a request to the MTA clinic, a medical appliances coordinator conducted a search, determined that Plaintiff's eyeglasses were lost, and placed him on the waiting list for an optometry appointment. Although Plaintiff does not remember the exact date or provide evidence of the encounter, he alleges that he saw Defendant David in early April, 2005, and Defendant David told Plaintiff that it was not his job to contact the optometry department. However, on April 26, 2005, Defendant David offered to schedule an optometry appointment if the eyeglasses had not been located by the time of Plaintiff's next chronic care appointment. On June 2, 2005, at Plaintiff's next chronic care appointment, Dr. Rowe, filling in for Defendant David, referred Plaintiff to the optometry department, as promised. At his deposition, Plaintiff admitted that it would be reasonable for PBSP staff to attempt to locate his missing pair of eyeglasses prior to scheduling an appointment for a new pair, because of the length of time it took to receive a new pair after they were ordered. (Pl.'s Depo. 93.) It is clear that PBSP staff, including Defendants McLean and David, attempted to help, rather than hinder, Plaintiff's efforts to locate his eyeglasses.

United States District Court
For the Northern District of California

After his referral to the optometry department on April 21, 2005, Plaintiff argues that Defendants somehow contributed to the remaining eight month delay in receiving his eyeglasses. Although Plaintiff was not able to see the optometrist until September 9, 2005, the evidence indicates that the scheduling process within the optometry department was outside the control of Defendants Jones, McLean and David. Further, although Plaintiff did not receive his new pair of eyeglasses until December, 2005, this was the same three-month delay that he had encountered in receiving his first pair. Plaintiff provides no evidence that the delay between his referral to the optometrist and his receipt of a new pair of eyeglasses was due to any action or inaction on the part of Defendants.

Likewise, nothing in the record suggests that Defendants McLean or David refused to treat Plaintiff's medical needs related to his purported vision headaches. Defendant McLean consistently ordered Tylenol at Plaintiff's request, and counseled Plaintiff to cut down on reading and other activities that appeared to cause his headaches. In his deposition, Plaintiff conceded that he was satisfied with the care that he received from Defendant McLean. Defendant David also ordered Tylenol for Plaintiff's headaches, at his request.

Plaintiff fails to show that his vision problems were a serious medical need within the meaning of the Eighth Amendment, or that Defendants Jones, McLean or David acted with deliberate indifference in responding to his medical needs.

United States District Court

For the Northern District of California

C.   Qualified Immunity

Defendants argue, in the alternative, that they are entitled to summary judgment based on qualified immunity.

The defense of qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  When qualified immunity is asserted in a motion for summary judgment, the district court must carefully examine the specific factual allegations against each individual defendant.  Cunningham v. Gates, 229 F.3d 1271, 1287 (9th Cir. 2000).

To determine whether a defendant is entitled to qualified immunity, the court must engage in a two step analysis.  In the first step, the court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right.  Conn v. Gabbert, 526 U.S. 286, 290 (1999).  If so, this right must be "clearly established," in light of the specific context of the case.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  The plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct.  Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992).  However, the court must view the facts in the light most favorable to the party asserting injury.  Saucier, 533 U.S. at 201.  If the law is determined to be clearly established in step one, at step two of the inquiry, a court must determine whether a reasonable

United States District Court

For the Northern District of California

official could have believed his or her conduct was lawful in the situation confronted.  Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).

Viewing the evidence in the light most favorable to Plaintiff, the Court has found that Defendants' actions did not amount to wanton and unnecessary infliction of pain in violation of the Eighth Amendment.  Even if Plaintiff's rights had been violated, though, Defendants would be entitled to qualified immunity because they have produced sufficient evidence that they could have believed that their actions were reasonable under the circumstances of each claim as outlined below.

First, Plaintiff alleges that Defendant David exhibited deliberate indifference, in violation of the Eighth Amendment, by not giving Plaintiff Maalox on February 24, 2004.  Defendant David was unable to fulfill Plaintiff's immediate request for Maalox because the antacid was not available.  However, in light of Plaintiff's complaint of acid indigestion, Defendant David acted reasonably by ordering prescription antacids, which were available to Plaintiff the next day.  In the interim, Defendant David could have reasonably surmised that Plaintiff would purchase Rolaids from the prison canteen.  Plaintiff also alleges that Defendant David purposely delayed scheduling an optometry appointment for Plaintiff.  Because of the long wait for a new pair of eyeglasses, Defendant David's decision to help Plaintiff search for his missing glasses prior to scheduling a new appointment was reasonable.

Second, Plaintiff alleges that Defendant Rowe was deliberately indifferent for failing to prescribe Prilosec or Mylanta on June 2, 2005.  During an argument about an unrelated issue, Plaintiff asked

23

United States District Court
For the Northern District of California

if Defendant Rowe would prescribe antacids and Defendant Rowe purportedly said "no."  Without saying another word, Plaintiff got up and left the room, after which Defendant Rowe placed prescription orders for all of Plaintiff's necessary heart medications.  Given the context, a reasonable prison official in Defendant Rowe's position could have thought it was unnecessary to grant Plaintiff's request for prescription antacids.

Third, Plaintiff alleges that Defendant Jones was deliberately indifferent to Plaintiff's vision needs, because Plaintiff gave her his broken eyeglasses on October 15, 2004.  Plaintiff has not alleged that Defendant Jones deprived him of an actual constitutional right.

Fourth, Plaintiff alleges that Defendant McLean violated his Eighth Amendment right to be free from cruel and unusual punishment because she did not schedule an optometry appointment for a new pair of eyeglasses.  Defendant McLean acted reasonably by following PBSP's policy of asking an MTA to call the optical department regarding Plaintiff's broken eyeglasses.

Therefore, Defendants Jones, Rowe, McLean and David are entitled to qualified immunity.

D.    Supplemental State Law Claims

Plaintiff's complaint includes supplemental state law claims against Defendants Jones, McLean, David and Rowe for medical malpractice under California law.

The federal supplemental jurisdiction statute provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution."
28 U.S.C. § 1367(a).  The elements of a claim for professional
negligence, also referred to as medical malpractice, under
California law, are "(1) the duty of the professional to use such
skill, prudence, and diligence as other members of his profession
commonly possess and exercise; (2) a breach of that duty; (3) a
proximate causal connection between the negligent conduct and the
resulting injury; and (4) actual loss or damage resulting from the
professional's negligence."  Budd v. Nixen, 6 Cal. 3d 195, 200
(1971), superseded in part by Cal. Civ. Proc. Code § 340.6.
Although prison employees often enjoy immunity from state tort
liability, California law expressly provides: "Nothing in this
section exonerates a public employee who is lawfully engaged in the
practice of one of the healing arts under any law of this state
from liability for injury proximately caused by malpractice."  Cal.
Gov't Code § 845.6.

Defendants argue that they exercised reasonable prudence and
diligence in providing medical care, and therefore did not breach
their duty of care to Plaintiff.  The evidence in the record,
described in detail above, supports the conclusion that Defendants
David and Rowe were not negligent in treating Plaintiff's
heartburn, and Defendants McLean and David were not negligent in
treating Plaintiff's vision problems or headaches.  Plaintiff's
claim against Defendant Jones, that she merely received Plaintiff's
eyeglasses, is insufficient to constitute negligence.
Alternatively, even if Defendants had been negligent, Plaintiff
suffered no cognizable injury, loss or damage related to either his
heartburn or vision problems.

**United States District Court**
For the Northern District of California

Accordingly, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's deliberate indifference and supplemental state law claims.

II.  Plaintiff's Motion for Summary Judgment

On October 15, 2007, Plaintiff filed a motion for summary judgment (docket no. 46), in which he raised arguments about retaliation, fraud and exhaustion.[8]  Defendants oppose this motion.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  To prove retaliation, a plaintiff must show that the defendants took adverse action against him or her that "would chill or silence a person of ordinary firmness from future First Amendment activities."  White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (citing Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

First, Plaintiff alleges that Defendants retaliated against him for filing inmate grievances and for initiating a lawsuit.

---

[8]Plaintiff did not raise these specific allegations in his FAC and the Court dismissed with prejudice Plaintiff's original claims against Defendants Worch and Thacker concerning the handling of his § 602 appeals.  In general, it is not proper for Plaintiff to advance new claims during summary judgment, but Plaintiff's arguments will be liberally construed and the Court will screen them as claims.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (a pro se plaintiff's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers").

United States District Court
For the Northern District of California

Specifically, Plaintiff argues that a retaliatory motive can be inferred against Defendants Jones, McLean and David for allegedly refusing to help Plaintiff find his missing eyeglasses, and against Defendant Rowe for allegedly refusing to order necessary medications.  As discussed above, Defendants did not refuse to help Plaintiff; they assisted Plaintiff by trying to find his missing eyeglasses and consistently provided necessary prescription medications.  Even if Plaintiff experienced delays in care that he attributed to Defendants, these delays would not dissuade a person of reasonable firmness from exercising his or her right to free speech.  Consequently, Plaintiff fails to state a cognizable claim.

Second, Plaintiff contends that, by omitting reference to the court reporter and two correctional officers present at his deposition and allegedly changing words in his deposition transcript, Defendants' counsel and the court reporter committed fraud.[9]  The minor errors alleged in the eight corrections to the transcript that Plaintiff filed on August 20, 2007 (docket no. 43) can be attributed to reasonable mistake on the part of the court reporter, and have not induced reliance.[10]  None of the changes that Plaintiff submitted affect his claims, Defendants' arguments, or the Court's disposition.  Therefore, Plaintiff fails to state a cognizable claim.

_____

[9]To establish a claim for fraud, Plaintiff must show: (1) a misrepresentation of fact; (2) contemporaneous knowledge that the representation is false; (3) intent to defraud and to induce reliance; (4) justifiable reliance; and (5) damages.  Hobart v. Hobart Co., 26 Cal. 2d 412, 422 (1945).

[10]For example, Plaintiff changed "when" to "would," "sly" to "slight," "peer" to "appeal" and "beef" to "belief" (Pl.'s Depo. 73, 86, 104, 115.)

United States District Court
For the Northern District of California

Third, Plaintiff argues that he has exhausted his administrative remedies. See Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006) (PLRA requires "proper exhaustion" of available administrative remedies). However, Defendants do not raise this as an affirmative defense. See Jones v. Bock, 127 S. Ct. 910, 919 (2007) (failure to exhaust is an affirmative defense under the PLRA). Thus, Plaintiff's argument is moot because exhaustion is not at issue here.

To the extent that Plaintiff has raised claims of fraud or retaliation on the part of Defendants Jones, McLean, David or Rowe, these claims are DISMISSED. For the reasons discussed in the previous section, Plaintiff has not established that Defendants acted with deliberate indifference to his medical needs. Therefore, his motion for summary judgment is DENIED.

III. Plaintiff's Motion for Leave to File a Supplemental Complaint and Screening of First Amended Complaint

On May 10, 2007, Plaintiff filed a motion for leave to file a supplemental complaint (docket no. 29). The Court must also screen Plaintiff's FAC, submitted on March 9, 2007 (docket no. 17).

A.   Motion for Leave to File Supplemental Complaint

Federal Rule of Civil Procedure 15(d) permits "supplemental pleadings setting forth transactions or occurrences or events that have happened since the date of the pleading sought to be supplemented." The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as is possible. LaSalvia v. United Dairymen of Ariz., 804 F.2d 1113, 1119 (9th Cir. 1986). "Rule 15(d) is intended to give district courts broad discretion in allowing supplemental pleadings. The rule is a tool

United States District Court
For the Northern District of California

of judicial economy and convenience." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988). However, "a supplemental complaint should have some relation to the claim set forth in the original pleading," and a court may deny leave to supplement a complaint on grounds of undue delay, prejudice to the opposing party, or futility. Id. at 474. Futility exists where no set of facts can be proved which would state a valid claim, or where the claim would be subject to dismissal. Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

Plaintiff's motion describes the following course of events, which happened after the date of his original pleading:  On March 19, 2007, Plaintiff set a fire in his cell in order to be placed in administrative segregation.  On April 13, 2007, Plaintiff was forced out of administrative segregation and housed in the general population, "after revealing who was trying to assassinate" him. On May 2, 2007, Plaintiff was "cell extracted by block gun after plaintiff staged this event" in order to return to administrative segregation.  On May 3, 2007, Plaintiff was placed in administrative segregation, after twenty-two hours without food. Although it is not explicit, it appears that Plaintiff's primary concern was a desire to be placed in administrative segregation. The events described by Plaintiff are unrelated to the claims and Defendants addressed in his original pleadings.

Even if the events were related, however, allowing Plaintiff to file a supplemental pleading would be futile because he has failed to state a valid claim.  Plaintiff alleges a "staff conspiracy to aid and abet inmates to stab plaintiff to death," but no specific staff members or constitutional violations are

mentioned.   Plaintiff's conclusory allegations of a conspiracy are insufficient to state a claim under § 1983.   See Woodrum v. Woodword County, 866 F.2d 1121, 1126 (9th Cir. 1989) (conspiracy, even if established, does not give rise to liability under § 1983 unless a plaintiff specifically alleges that a constitutional right was violated).

Therefore, Plaintiff's motion to file a supplemental complaint is DENIED.

B.   First Amended Complaint

On March 9, 2007, Plaintiff submitted a FAC, restating his previous allegations against Defendants Reallon, Lazore, Winslow and Sayre; and alleging new claims against Defendants Rios, Girospis, Wahidullah, Tilton, Jain, Sutter Coast Hospital and SCH staff members Doe, Holmes and Butler (docket no. 17).   Plaintiff did not serve the FAC on Defendants.

Federal Rule of Civil Procedure 15(a) provides that pleadings may be amended once, without leave, if no answer has been filed. Nevertheless, a federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.   28 U.S.C. § 1915A(a).   In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.   Id. § 1915A(b)(1), (2).

1.   Defendants Reallon, Lazore, Winslow and Sayre

In an Order dated February 1, 2007, the Court gave Plaintiff leave to amend his claims against Defendants Reallon, Lazore,

30

United States District Court
For the Northern District of California

Winslow and Sayre related to their treatment of his fractured thumb and to Plaintiff's exposure to a cell used to quarantine inmates with staph infections.  The Court instructed Plaintiff that, in amending his claims, he must "allege in good faith, and by citing actual examples which are subject to proof, that the named Defendants denied his specific requests for pain medication after he refused orthopedic surgery during the time-frame alleged above or that he suffered any illness from being exposed to a cell used to quarantine inmates with staph infections."  Plaintiff's FAC does not refer to being exposed to staph infection and simply reiterates the remaining allegations against these Defendants that were stated in Plaintiff's original complaint.

Plaintiff's FAC does not cure the pleading deficiency identified in the Court's Order dismissing these claims against Defendants Reallon, Lazore, Winslow and Sayre related to their treatment of his fractured thumb.  These claims are DISMISSED WITHOUT PREJUDICE.

> 2.   Defendants Rios, Girospis, Wahidullah, Jain and Tilton

Plaintiff alleges that Defendants Rios, Girospis, Wahidullah and Jain "failed to refer" him to a specialist for his stomach problems and delayed his receipt of an upper GI test, and that Defendant Tilton is liable in his supervisory capacity.

The claims asserted against these Defendants are frivolous because the Court has already ruled on these issues and Plaintiff cannot prevail on his claims.  The Court has found that Plaintiff failed to show that his stomach problems are a serious medical need within the meaning of the Eighth Amendment.  Further, although

31

**United States District Court**
For the Northern District of California

Plaintiff alleges some delay in access to tests and specialists, the evidence shows that PBSP medical staff provided sufficient and timely medical care and consistently addressed Plaintiff's medical needs in a reasonable fashion.

Therefore, Plaintiff's claims against Defendants Rios, Girospis, Wahidullah, Jain and Tilton are DISMISSED WITH PREJUDICE.

### 3.   Sutter Coast Hospital Defendants

In his FAC, Plaintiff alleges that Defendants SCH, and staff members Doe, Holmes and Butler were deliberately indifferent in treating his fractured left thumb.[11]

On March 5, 2005, Plaintiff fractured his thumb in an altercation with another inmate.  (FAC Ex. 9.)  On the same day, a PBSP physician ordered Tylenol for Plaintiff and sent him to the SCH emergency room, where Defendant Butler took Plaintiff's vital signs, prescribed medication, administered a tetanus shot, and escorted Plaintiff to the x-ray unit.  (Id. ¶ 70, Ex. 11.) Defendant Holmes wrapped Plaintiff's fractured left thumb in a splint but did not prescribe pain medication.  (Id. ¶ 71.) Plaintiff was then discharged from SCH and transferred back to PBSP.  (Id. Ex. 12.)

Even if SCH Defendants were acting under color of state law, Plaintiff fails to state cognizable claims against them.  SCH Defendants provided reasonable outpatient care.  Plaintiff's allegations that SHC Defendants did not provide appropriate follow-up treatment after Plaintiff returned to PBSP are without merit.

---

[11]On June 4, 2007, Plaintiff also filed a document entitled, "notice of lawsuit" against SCH Defendants.  This document fails to state a valid cause of action.  Construing the document liberally, as a request for leave to amend, the request is futile and, thus, denied.

Plaintiff's follow-up treatment was the purview of PBSP medical staff, and these related claims against PBSP Defendants Reallon, Lazore, Winslow and Sayre have been dismissed.

For the reasons described above, Plaintiff's claims against SCH Defendants are DISMISSED WITH PREJUDICE.

IV.   Plaintiff's Motion for Preliminary Injunction

Plaintiff moves for a preliminary injunction "compelling Defendants to perform their pre existing duties" (docket no. 18).

To establish entitlement to a preliminary injunction, a moving party must demonstrate either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that there exist serious questions regarding the merits and the balance of hardships tips sharply in its favor.  Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).  The test is a "continuum in which the required showing of harm varies inversely with the required showing of meritoriousness."  Id. (quoting San Diego Comm. Against Registration & the Draft v. Governing Bd. of Grossmont Union High Sch. Dist., 790 F.2d 1471, 1473 n.3 (9th Cir. 1986)).

Because Plaintiff's claims did not succeed on their merits, and because Plaintiff failed to show the possibility of irreparable harm, Plaintiff's motion is DENIED.

V.   Plaintiff's Request for Subpoenas Duces Tecum

Plaintiff asks this Court to serve subpoenas duces tecum on the PBSP custodians of property records, mail logs, medical records, rules violation reports, and all "policies, directives, and memoranda" on a variety of medical topics (docket no. 33).

Plaintiff may compel a person who is not a party to this

United States District Court
For the Northern District of California

33

United States District Court
For the Northern District of California

action to appear before the court and produce documents for inspection and copying, pursuant to a subpoena duces tecum.  <u>See</u> Fed. R. Civ. P. 34(c), 45(a).  In order to do so, Plaintiff must fill out subpoena forms and ensure that each person is served with the subpoena by a non-party.  Plaintiff must tender to each person "the fees for one day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1).  The fee for each person is forty dollars per day, <u>see</u> 28 U.S.C. § 1821(b), and cannot be waived for a plaintiff proceeding <u>in forma pauperis</u>.  <u>See</u> <u>Dixon v. Ylst</u>, 990 F.2d 478, 480 (9th Cir. 1993).

Plaintiff argues that on two occasions his requests for medical records were denied.  (Plaintiff's request for subpoenas duces tecum at 1.)  However, the documents attached to Plaintiff's request for medical records reveal that Plaintiff completed the request on the wrong administrative form, after which PBSP personnel informed him in a timely fashion that he must complete his request on a different form.  Then, when PBSP fulfilled Plaintiff's request, he refused to pick up the records.  (<u>Id.</u> Exs. 1-3.)

Regardless, Defendants attached Plaintiff's entire medical record to their motion for summary judgment.  Plaintiff refers to this evidence to support his cross motion for summary judgment. Defendants also summarized the PBSP vision and prescription eyeglasses policy.  Consequently, Plaintiff had access to the only records that he requested that were relevant to his cognizable claims in this action.

Therefore, Plaintiff's request for subpoenas duces tecum is DENIED.

34

United States District Court

For the Northern District of California

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.    Defendants' motion for summary judgment (docket no. 35) is GRANTED.

2.    Plaintiff's cross motion for summary judgment (docket no. 46) is DENIED.

3.    Plaintiff's motion for leave to file a supplemental complaint (docket no. 29) is DENIED.

4.    The Court has screened Plaintiff's FAC as follows: Plaintiff's claims against Defendants Reallon, Lazore, Winslow and Sayre related to the treatment of his fractured thumb are DISMISSED WITHOUT PREJUDICE; and all remaining claims against Defendants Rios, Girospis, Wahidullah, Tilton, Jain, Doe, Butler, Holmes and SCH are DISMISSED WITH PREJUDICE.

5.    Plaintiff's motion for preliminary injunction (docket no. 18) is DENIED.

6.    Plaintiff's request for subpoenas duces tecum (docket no. 33) is DENIED.

7.    This Order terminates Docket nos. 18, 29, 33, 35 and 46.

8.    The Court shall enter judgment and close the file.  Each party shall bear his or her own costs.

IT IS SO ORDERED.

DATED:  3/28/08                    _____
                                  CLAUDIA WILKEN
                                  United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

JOSEPH A. GEORGE,

        Plaintiff,

   v.

A. JONES et al,

        Defendant.

_____/

Case Number: CV06-02800 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 28, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Joseph A. George T-79867
3065 Webster Ave.
San Diego, CA 92113

Neah Huynh
Attorney General's Office
Correctional Law Section
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102

Dated: March 28, 2008

                        Richard W. Wieking, Clerk
                        By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California